UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Inbounds, Inc.,

    Plaintiff,

v.                                  Case No. 11-10806

Gary Player Group, Inc.,                  Honorable Sean F. Cox

    Defendant.
_____/

## OPINION & ORDER

The phrase "no good deed goes unpunished" is a sardonic commentary on the frequency with which acts of kindness backfire on those who offer them. Gary Player is a famous professional golfer who, after the facts of this case, likely feels a new affinity for the phrase.

Back in 1993, Gary Player voluntarily autographed 250 prints for a charity called Inbounds, Inc. ("Inbounds") so that Inbounds could sell them as a fund-raising mechanism. Inbounds ceased operations in 1995, after very little success in selling the prints. Approximately fourteen years later, in 2009, Inbounds's founder had a consignment company list one of the autographed prints for sale on eBay.com. The listing stated that the consignment company was not the owner or seller of the item being sold but did not list the actual owner or seller. Defendant Gary Player Group, Inc. (the "Gary Player Group") is a corporation associated with Gary Player that polices the Gary Player brand and attempts to prevent the illegal sale of Gary Player memorabilia. After seeing the eBay listing, a representative of the Gary Player Group sent a single e-mail to the consignment company questioning the consignment company's authority to sell the item. The e-mail was sent to, and addressed to, the consignment company

1

and made no reference whatsoever to either Inbounds or its founder. Nevertheless, on January 12, 2011, Inbounds filed this action against the Gary Player Group, asserting two claims: "Tortious Interference with Advantageous Business Relationship or Expectancy" and "Injurious Falsehood."

The matter is currently before the Court on cross-motions for summary judgment filed by the parties following discovery. The Court finds that the issues have been adequately presented in the parties' briefs and that oral argument would not significantly aid the decisional process. *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. The Court therefore orders that the motion will be decided upon the briefs. For the reasons set forth below, the Court shall grant summary judgment in favor of the Gary Player Group and shall dismiss this action with prejudice.

BACKGROUND

Inbounds is a non-profit corporation that was formed in 1989 by Don Simmons ("Simmons"). (Simmons Dep. at 11-13). Simmons created Inbounds to introduce disadvantaged youth to golf. (*Id*.).

Simmons testified that Inbounds "designed a talk on the sandtraps of life." (Simmons Dep. at 20-21). In the late 1980's and early 1990's, Inbounds' activities consisted of presenting that talk to a youth group at the PGA of America and a few other groups. (*Id*.).

In 1993, Simmons came up with an idea to raise funds for Inbounds. (Pl.'s Stmt. of Facts at ¶ 3; Def.'s Response to same). Simmons asked his friend Jim Applegate ("Applegate"), who was the President and CEO of the Gary Player Design Company (the "GPDC"), for his help.

Applegate, not Mr. Player, owns the GPDC. Applegate formed the GPDC in 1985. From

1985 to 1997, Applegate had a licensing agreement with Gary Player relating to golf course design. (Applegate Dep. at 12-13).

Applegate introduced Simmons to Mr. Player. Inbounds ultimately created 250 hand-numbered prints of an artistic rendering of Mr. Player. Mr. Player autographed those 250 prints and knew that the prints were being signed for Inbounds, as a fund-raising mechanism for Inbounds. (Applegate Dep. at 24-27).

In December of 1993, Applegate and/or his business, the GPDC, purchased approximately 25 of the prints from Inbounds for "roughly $4,000." (Simmons Dep. at 26-28). Simmons testified that he sold a few of the prints to other individuals sometime in 1994. (Simmons Dep. at 28-29).

In 1995, Inbounds ceased operations due to health problems that Simmons was experiencing. (Simmons Dep. at 22). Simmons testified that, although there was an attempt at resuming operations, Inbounds never resumed operations after 1995. (*Id*.). The only funding that Inbounds ever received was from the sale of the prints. (Simmons Dep. at 23).

Simmons testified that from 1995 to 2009, only one print was sold, when he sold a print to an individual in 2008. (Simmons Dep. at 36 & 39-40).

Simmons testified that in December of 2007, he met with an archives specialist at the Gary Player Group, "to see if they would like to purchase a few of the prints," and that he told the archives specialist he was going to try to attempt to sell some prints. (Simmons Dep. at 44-45 & 49). Simmons did not tell the archives specialist, or anyone else at the Gary Player Group, that he or Inbounds planned to sell prints on eBay or through ISold It. (*Id.* at 45).

"eBay is a well-known online marketplace for the sale of goods and services. eBay's

website facilitates exchanges between prospective buyers and sellers listing items for sale." *In re Ebay Seller Antitrust Litigation*, 2010 WL 760433 (N.D. Cal. 2010).

It is undisputed that neither Simmons nor Inbounds have ever directly listed any of the prints for sale on eBay.com.

Encore Online Resale, a successor entity to ISold It Ann Arbor, (hereinafter "the Consignment Company") was a consignment company that sold items on eBay on behalf of individuals and other entities. (Kamm Affidavit, attached to Pl.'s Br. as Ex. 14 "Kamm Aff. II"). The Consignment Company, which is owned by Carol Kamm, was paid a percentage of the sale price upon completion of a sale. (Kamm Affidavit, attached as Ex. B to Def.'s Motion "Kamm Aff. I").

On or about February 27, 2008, Simmons came to the Consignment Company and asked it to list prints for sale on eBay at a price of $199.00 each. (Kamm Aff. I). On February 27, 2008, the Consignment Company, on behalf of Inbounds, listed the prints on eBay. (*Id.*) At the request of Inbounds, the Consignment Company removed the listing in April of 2008 and none of the prints had sold as of that date. (Kamm Aff. II).

At the request of Inbounds, the prints were re-listed on eBay by the Consignment Company on February 20, 2009. (Kamm Aff. II).

The listing that the Consignment Company placed on eBay is attached to Plaintiff's Brief as Exhibit 15. The Consignment Company created that listing. The title of the listing was "SIGNED GARY PLAYER LIMITED EDITION CHALLENGE PRINT." The body of the listing stated:

> For your consideration and purchase is a Limited Edition, signed and Numbered, Gary Player Character Challenge Print. This matted print measures 16" x 20"

4

overall. The print comes with a certificate of authenticity . Print #72 was given
to Mr. Gary Player for his 72nd Birthday, November 1, 2007. We wished him well
in his future endeavors. This is your chance to Own a Piece of Golf History! Mr.
Gary Player will make his 52nd and record breaking appearance at this years
Master's Golf Tournament!

In 1993, Mr. Gary Player agreed to personally hand-sign 250 "Character
Challenge" Limited Editions. They were autographed and given as a gift to
Inbounds, Inc. to show his support. These prints were designed by Inbounds, Inc.
The message "Play Your Game, Live Your Life Inbounds," is the trademark
motto of Inbounds, Inc.

Inbounds, Inc.'s initiatives included the introduction of golf skills to mostly
disadvantaged youth. We also implemented the teaching of character core values
and life skills. We designed a presentation, "The Sand Traps of Life," which is
challenging and stimulating for all junior golf clubs and camps. This presentation
was presented to the PGA of America Junior Golf Program.

Please see the photos for more details. Thanks for looking!!

(*Id.*). The listing stated that the Consignment Company "is not the owner or seller of these goods, but merely a bailee acting on behalf of the seller" but does not identify the owner or seller of the print. (*Id.*).

The Gary Player Group is a corporation associated with Gary Player that represents the Gary Player brand. (Marc Player Dep. at 22). Among other things, the Gary Player Group polices the Gary Player brand. Marc Player testified as follows:

> . . . . One of the biggest assets we have is our brand, the Gary
> Player brand, just like Jack Nicklaus or Tiger Woods or Arnold
> Palmer. People are out there taking advantage and there are all
> sorts of companies and individuals who forge signatures, who send
> little boys and girls to golf tournaments and basketball matches to
> get your signature so they can sell them on eBay and make a buck.
> So we do routine check[s] all the time . . .
>
> . . . .
>
> A.  As I said, there are all sorts of individuals and corporations that are out
>     there selling illegal memorabilia. It's my job, it's our organization's job,

> in representing Gary Player and the brand, to make sure that we police it, to make sure that the brand is being properly managed and built. After all, it's what our greatest asset is. So routinely every year we go and check and we check to see who out there, which companies, which perhaps individuals are abusing the name, logo, likeness, signature of Gary Player.

(Marc Player Dep. at 22-23).

On February 25, 2009, the Consignment Company received an e-mail from Garnette Brown of the Gary Player Group, stating that the Consignment Company did not have the right to sell the prints. (Kamm Aff. I). That e-mail was sent to ISoldIt, through the eBay platform, and stated, in its entirety:

> *Dear isoldit.mi101,*
>
> We have learned that *you* have misappropriated an autographed memorabilia piece of Gary Player and that *you* have attempted to sell this item on eBay. *You* have no authority to do so, and we believe that you are aware that your actions are illegal. We demand that you return the item and all other Gary Player-autographed items that you have in your possession to us immediately. We have informed eBay of this violation of Mr. Player's rights and, based on our review of this matter with counsel, we will pursue further remedies against *you* if you do not return all Gary Player autographed items to us immediately. Very Truly Yours,
>
> Garnette Brown
> Gary Player Group, Inc.
> c: Kevin Abraham Rynbrant, Esq.

(Ex. 7 to Pl.'s Resp. Br.) (Emphasis added).

Kamm's Affidavit states that the Consignment Company "never consulted with the Gary Player Group prior to, or in connection with, listing the prints for sale on eBay" and that the Consignment Company "did not have authority from the Gary Player Group to sell the prints or to list them on eBay." (Kamm Aff. I). Kamm's Affidavit also states that the Consignment Company "listed the Prints on ebay.com for Inbounds." (Kamm Aff. II).

Garnette Brown testified that he sent the above e-mail on February 25, 2009, and that the

e-mail was sent through Jennifer Fonseca's eBay account. (Brown Dep. at 35 & 40). Brown also testified:

> Q. Down at the bottom it says, "We have informed eBay of the violation of Mr. Player's rights." Did you do anything to inform eBay, other than send this e-mail?
> A. Not that I recall.
> Q. Do you know whether or not anyone else did anything to inform eBay?
> A. No.

(*Id.* at 46).

On March 10, 2009, the Consignment Company forwarded the above e-mail to Simmons, with a subject line stating, "You've received a question about your eBay item, SIGNED GARY PLAYER LIMITED EDITION CHALLENGE PRINT." (Ex. 7 to Pl.'s Br.).

Inbounds filed this action against Defendant Gary Player Group in state court on or about January 12, 2011, and the action was removed to this Court based on diversity jurisdiction.

Inbounds's complaint asserts two claims: "Tortious Interference with Advantageous Business Relationship or Expectancy" (Count I); and "Injurious Falsehood" (Count II). Its complaint alleges that:

> 11. On February 25, 2009, Garnett [sic] Brown, on behalf of the Player Group, contacted eBay via e-mail and falsely asserted that *Inbounds* had no authority to sell the autographed prints, and maliciously asserted that *Inbounds* had "misappropriated an autographed memorabilia piece of Gary Player." The February 25, 2009 e-mail communication is already in the Player Group's possession.

(Compl. at ¶ 15) (emphasis added).

Count I, Inbounds's claim for tortious interference with business relationship or expectancy, alleges that "Inbounds had a valid business relationship or expectancy with eBay to sell the autographed prints of Mr. Player." (Compl. at ¶ 15). The only alleged interference upon

7

which this claim is based is the Gary Player Group's sending of the February 25, 2009 e-mail.

Count II, Inbounds's injurious falsehood claim, is also based solely upon the February 25, 2009 e-mail.

Although Inbounds's Complaint alleges that the February 25, 2009 e-mail sent by the Gary Player Group asserted that *Inbounds* had no authority to sell the prints, and asserted that *Inbounds* had misappropriated the print, Simmons acknowledged during his deposition that the e-mail in question makes no reference to Inbounds whatsoever:

> Q. Okay. Was there anything in the [February 25, 2009] email that refers to you or to Inbounds, Inc.?
> A. No.
> Q. The email was not addressed to you or to Inbounds, correct?
> A. Correct.
> Q. The email was addressed to I Sold It, AA?
> A. Correct.
> . . . .
> Q. Are you aware of any other email or communication between the Gary Player Group and anybody else that states that Inbounds had no authority to sell the autographed prints?
> A. Not aware.
> Q. So the allegation at paragraph 11 is incorrect, isn't it? It says: Mr. Brown, on behalf of the Player Group, contacted Ebay via email and falsely asserted that Inbounds had no authority to sell the autographed prints.
>     MR. WOLFE: Objection.
> BY MR. LEVASSEUR:
> Q. It doesn't mention – the email you're referring to in that paragraph doesn't even mention Inbounds, does it?
>     MR. WOLFE: Objection.
> BY MR. LEVASSEUR:
> Q. You can answer.
> A. No.
> Q. Nothing in Mr. Brown's email of February 25th, 2009, which has been bates stamped as page three on Exhibit 2, maliciously asserts that Inbounds had misappropriated an autographed memorabilia piece of Gary Player, does it?
>     MR. WOLFE: Objection.
>     THE WITNESS: No.

. . . .
> Q. Are you aware of any document where the Gary Player Group maliciously asserted that Inbounds had misappropriated an autographed memorabilia piece of Gary Player?
> MR. WOLFE: Objection. You can answer.
> THE WITNESS: Not aware.
> BY MR. LEVASSEUR:
> Q. All right. In fact, you've never been aware of any such document?
> MR. WOLFE: Objection.
> THE WITNESS: Not aware. Cannot recall.

(Simmons Dep. at 60-65). Simmons further testified as follows:

> Q. Paragraph 12 of the Complaint says: Since February 2009, Inbounds has been unable to sell any of the prints remaining in its possession on Ebay or otherwise.
> What attempt have you made since February of 2009 to sell prints?
> A. None.
> Q. Why not?
> A. Because I complied to the response from Gary Player because of my respect for the company and I chose not to try and sell anymore.
> Q. What response are you referring to?
> A. The response from the letter from them saying that they are not interested in the prints and the fact that they took the action they did on Ebay for the prints that were there.
> Q. What response are you referring to? Are you referring to anything in writing from the Gary Player Group?
> A. They communicated in writing that they were not interested in the prints, yes sir.
> Q. They didn't want to buy the prints from you?
> A. Correct.
> Q. But they didn't tell you you couldn't sell them at the Master's or anywhere else, did they?
> MR. WOLFE: Objection. You can answer.
> THE WITNESS: No, they did not tell me I could not sell them at the Master's.
> BY MR. LEVASSEUR:
> Q. Okay. They didn't tell you you could not sell them yourself on Ebay?
> MR. WOLFE: Objection. You can answer.
> THE WITNESS: They did not say I could not sell them myself.
> BY MR. LEVASSEUR:
> Q. Okay. What relationship did Inbounds and Ebay have, if any?
> MR. WOLFE: Objection. Objection.

9

>            THE WITNESS:     No specific relationship.

(Simmons Dep. at 65-67).

Marc Player testified as follows regarding the Gary Player Group's sending of the February 25, 2009 e-mail:

> Q. So with the prints that are at issue here, what was the red flag; do you know?
> A. No. I don't believe they're – I believe – I don't believe the prints were the red flag. I think it was [they] got onto eBay, there was memorabilia that was there, no one could identify the company that was selling it. So a routine letter was sent to them . . . I think they went on eBay and saw the print and said we don't recognize this, this didn't come from us. Let's see who is behind it, send them a letter.

(Marc Player Dep. at 29).

Following the close of discovery, the Gary Player Group filed a Motion for Summary Judgment.

Inbounds then filed its own Motion for Summary Judgment, asking the Court to rule that Inbounds is entitled to judgment as a matter of law.

## ANALYSIS

### I. Plaintiff's Tortious Interference with Business Relationship or Expectancy Claim

Under Michigan law, a plaintiff must establish the following elements to prevail on a tortious interference with business relationship or expectancy claim: 1) the existence of a valid business relationship or expectancy; 2) knowledge of the relationship or expectancy on the part of the defendant interferer; 3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and 4) resulting damage to the party whose relationship or expectancy has been disrupted. *Wausau Underwriters Ins. Co. v. Vulcan Dev., Inc.*, 323 F.3d 396, 404 (6th Cir. 2003); *Hamilton v. City of Romulus*, 409 Fed.App'x 826, 839

(6th Cir. 2010).

The Gary Player Group is entitled summary judgment because, among other things,[1] it cannot establish the third element – an intentional interference inducing or causing a breach or termination of the relationship or expectancy.

"[S]howing an intentional interference requires showing purposeful or knowing behavior and that the interference was either (1) a per se wrongful act or (2) a lawful act done 'with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another.'" *Hamilton*, 409 Fed.App'x at 839 (quoting *Feldman v. Green*, 138 Mich.App. 360 (1984)) (emphasis added). That is, the third element requires the plaintiff to demonstrate that the third party was induced either to breach the contract or to break off the prospective business relationship by an intentional act that is either 1) wrongful per se; or 2) lawful, but done with malice and unjustified in law. *Warrior Sports, Inc. v. National Collegiate Athl. Ass'n*, 623 F.3d 281, 287 (6th Cir. 2010) (citations omitted).

"A 'per se wrongful act' is an act that is inherently wrongful or one that is never justified under any circumstances." *Formall, Inc. v. Community Nat. Bank of Pontiac,* 166 Mich.App. 772, 779 (1988). The Gary Player Group's sending of the e-mail was not a per se wrongful act and Inbounds does not contend otherwise.

Where, as here, the "defendant's conduct was not wrongful per se, the plaintiff must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference."

---

[1] In seeking summary judgment as to this claim, the Gary Player Group contends that Inbounds cannot establish any of the above elements. While the Gary Player Group's motion raises solid arguments as to each of the above elements, this Court need not address them all.

*CMI Intern., Inc. v. Intermet Intern. Corp.*, 151 Mich.App. 125, 132 (2002).

Rather than present evidence to demonstrate specific, affirmative acts that corroborate the allegedly unlawful purpose of the interference, Inbounds asserts that the Gary Player Group recklessly or negligently interfered with its relationship with eBay in that: 1) the Gary Player Group should have known that Inbounds was going to sell the print; and 2) the Gary Player Group failed to conduct a sufficient investigation before sending the e-mail. Tortious interference with business relationship or expectancy, however, is an *intentional tort*. *See, e.g., Dalley v. Dykema Gossett*, 287 Mich.App. 296, 685 (2010). Because this third element requires the plaintiff to establish an intentional interference, these negligence-based arguments are unavailing and insufficient to establish the third element.

Moreover, "[w]here the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference." *BPS Clinical Labs. v. Blue Cross & Blue Shield*, 217 Mich.App. 687, 699 (1996). Thus, "defendants motivated by legitimate personal and business reasons are shielded from liability against this cause of action." *Formall, Inc.,* 166 Mich.App. at 780.

Here, the Gary Player Group has presented evidence establishing that it was motivated by legitimate business reasons – policing the Gary Player brand and attempting to prevent the sale of illegal Gary Player memorabilia. Because it has established a legitimate business purpose for its actions, the Gary Player Group is entitled to summary judgment as to this claim. *BPS Clinical Labs.*, 217 Mich.App. at 699.**[2]**

---

[2]Moreover, the Court fails to see how Inbounds could establish that the e-mail "broke off the prospective relationship" between Inbounds and eBay, given Simmons's testimony that the Gary Player Group did not tell him that Inbounds could not sell the prints on eBay. (Simmons

**II.     Plaintiff's Injurious Falsehood Claim**

"Injurious falsehood was recognized as an actionable claim in Michigan in *Knollenberg v. Ramirez*, 127 Mich.App. 345 (1983)." *Neshewat v. Salem*, 173 F.3d 357, 362 (6th Cir. 1998). "The Michigan Court of Appeals essentially adopted the elements of injurious falsehood as set forth in the Restatement (Second) of Torts." *Id.* The "gist of the tort is some interference with an economically advantageous relationship which results in pecuniary loss rather than action that directly affects property." *Knollenberg,* 127 Mich.App. at 178. "Injurious falsehood cases typically concern derogatory or disparaging communications regarding the title to property or its quality." *Id.* Inbounds contends that its injurious falsehood claim is of this typical variety in that it "involves derogatory communications regarding the title to property or its quality." (D.E. No. 33 at 17).

Among other things, the "plaintiff carries the burden of proving that the injurious statement is actually false. If the statement is not false, the plaintiff has no claim." *Newshewat*, 173 F.3d at 363.

Here, Inbounds asserts that Gary Player Group's February 25, 2009 e-mail "which asserted that *Inbounds* misappropriated the Prints, had no authority to sell the Prints on ebay.com, and that *Inbounds'* actions were illegal, is false." (D.E. No. 33 at 18) (emphasis added).

The February 25, 2009 e-mail was sent to, and addressed to, the Consignment Company – not Inbounds or Simmons. Moreover, as Simmons acknowledged during his deposition the e-

---

Dep. at 65-67).

mail at issue *made no reference to Inbounds whatsoever*. Thus, contrary to Inbounds's argument, the record evidence establishes that the e-mail that forms the basis of this claim did not reference Inbounds, did not assert that Inbounds misappropriated the prints or lacked authority to sell the prints, and did not assert that Inbounds's actions were illegal.

As with the tortious interference claim, Defendant's motion raises several solid arguments as to why this claim fails. The Court need not address all of them. The Court shall grant summary judgment in favor of the Gary Player Group because there is no evidence to establish that the statements at issue were false and/or that the statements at issue referred to Inbounds. *See, e.g., Arim v. General Motors Corp, Inc.*, 206 Mich.App. 178, 197-98 (1994) (Affirming trial court's grant of summary disposition of plaintiffs' claim of injurious falsehood because there was no evidence to establish the statements at issue were false or that the "statements referred to plaintiffs.").

As to the statement that the Consignment Company did not have the authority to sell Gary Player memorabilia, the owner of the Consignment Company's Affidavit states that the Consignment Company "never consulted with the Gary Player Group prior to, or in connection with, listing the prints for sale on eBay" and that the Consignment Company "did not have authority from the Gary Player Group to sell the prints or to list them on eBay." (Kamm Aff. I). Thus, Inbounds cannot establish that the statement was untrue. Moreover, the statement was not made about Inbounds or Simmons and made no reference to Inbounds's ownership or title to the prints.

Inbounds contends that the Gary Player Group cannot establish that the statement in the e-mail asserting the Consignment Company misappropriated the print is true. Again, that statement was made about the Consignment Company – not Inbounds or Simmons. Inbounds

asserts that "to the extent that Defendant admits its statements made about ISoldIt, the statements were made about Inbounds." (Pl.'s Reply Br. at 4). However, Inbounds has not identified any authority that would allow it to assert an injurious falsehood claim on behalf of a third party.[3]

CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Plaintiff's Motion for Summary Judgment is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment is GRANTED and that this action IS DISMISSED WITH PREJUDICE.

> S/Sean F. Cox
> Sean F. Cox
> United States District Judge

Dated: May 3, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 3, 2012, by electronic and/or ordinary mail.

> S/Jennifer Hernandez
> Case Manager

---

[3] Moreover, the Court fails to see how the e-mail at issue could have caused Inbounds a pecuniary loss in light of Simmons's testimony that the Gary Player Group did not tell him that Inbounds could not sell the prints at the Master's Tournament or anywhere else, and did not tell Simmons that he or Inbounds could not sell the prints on eBay. (Simmons Dep. at 65-67).